1   SHAWN D. HAGERTY, Bar No. 182435
    shawn.hagerty@bbklaw.com
2   GREGG W. KETTLES, Bar No. 170640
    gregg.kettles@bbklaw.com
3   ANYA KWAN, Bar No. 333854
    anya.kwan@bbklaw.com
4   BEST BEST & KRIEGER LLP
    300 South Grand Avenue
5   25th Floor
    Los Angeles, California  90071
6   Telephone:    (213) 617-8100
    Facsimile:    (213) 617-7480
7
    Attorneys for Defendant
8   CITY OF EUREKA

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                         OAKLAND DIVISION

13

14   ECOLOGICAL RIGHTS FOUNDATION, a       Case No. 4:22-cv-01459-JST
     non-profit corporation,
15                                          **[PROPOSED] ORDER TO MODIFY
                   Plaintiff,               CONSENT DECREE**
16
          v.                                Date:        December 12, 2024
17                                          Time:        2:00 p.m.
     CITY OF EUREKA, a municipal corporation,   Courtroom:   6
18                                          Judge:       Honorable Jon S. Tigar
                   Defendant.
19                                          Trial Date:  Vacated
                                            Action Filed: March 8, 2022
20

21

22

23

24

25

26

27

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
300 SOUTH GRAND AVENUE, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90071

The City of Eureka ("City") Motion to Modify Consent Decree ("Motion") came on regularly for hearing in Courtroom 6 of the above entitled court on December 12, 2024 at 2:00 p.m., or as soon thereafter as was able to be heard, with the Honorable Jon S. Tigar presiding.

Having considered City's Motion and its supporting papers, the responsive papers filed by other parties, the complete files and records of this action, and the arguments presented at the hearing on the Motion and for good cause showing, the Court rules as follows:

The City's Motion to Modify Consent Decree is GRANTED.  The Court further adopts the Proposed Amended Consent Decree attached to this Order revising the Consent Decree entered on January 27, 2023.

IT IS SO ORDERED.

Dated: _____, 2024          By: _____
                                                    Honorable Jon S. Tigar
                                                    United States District Court

ATTACHMENT

1   SHAWN D. HAGERTY, Bar No. 182435
    shawn.hagerty@bbklaw.com
2   GREGG W. KETTLES, Bar No. 170640
    gregg.kettles@bbklaw.com
3   ANYA KWAN, Bar No. 333854
    anya.kwan@bbklaw.com
4   BEST BEST & KRIEGER LLP
    300 South Grand Avenue
5   25th Floor
    Los Angeles, California  90071
6   Telephone:    (213) 617-8100
    Facsimile:    (213) 617-7480
7
    Attorneys for Defendant
8   CITY OF EUREKA

9
                    UNITED STATES DISTRICT COURT
10
                   NORTHERN DISTRICT OF CALIFORNIA
11

12
    ECOLOGICAL RIGHTS FOUNDATION, a       Case No. 4:22-cv-01459-JST
13  non-profit corporation,
                                          **[PROPOSED] AMENDED CONSENT
14              Plaintiff,                DECREE**

15         v.                            Judge:        Hon. Judge Jon S. Tigar
                                         Action Filed: March 8, 2022
16  CITY OF EUREKA, a municipal corporation, Trial Date:   July 8, 2024

17              Defendant.

18

19

20

21

22

23

24

25

26

27

28

The following [Proposed] Amended Consent Decree is entered into by and between Plaintiff Ecological Rights Foundation ("EcoRights") and Defendant City of Eureka ("Eureka"). In this Consent Decree, EcoRights and Eureka are sometimes referred to individually as a "Party" and collectively as the "Parties".  The Parties enter into this Consent Decree in light of the following recited facts (each as "Recital").

## RECITALS

A.     **WHEREAS**, EcoRights is a non-profit, public benefit corporation, organized under the laws of the State of California, devoted to furthering the rights of all people to a clean, healthful, and biologically diverse environment.

B.     **WHEREAS**, Eureka is a charter city and municipal corporation organized under the Charter of the City of Eureka and the laws of the State of California, devoted to protecting the public health, safety and welfare of its residents.

C.     **WHEREAS**, Eureka owns and operates a public sewer collection system ("Collection System") and the Elk River Wastewater Treatment Plant ("Treatment Plant").

D.     **WHEREAS**, Eureka was the permittee under both the *Waste Discharge Requirements for the City of Eureka Elk River Wastewater Treatment Plant Humboldt County*, National Pollutant Discharge Elimination System Permit No. CA0024449, California Regional Water Quality Control Board, North Coast Region ("Regional Board") Order No. R1-2016-0001 (the "2016 NPDES Permit") and the concurrently adopted *Cease and Desist Order* No. R1-2016-0012, as subsequently amended by Order R1-2020-0020 (the "CDO").

E.     WHEREAS, the City became a permittee under the *Waste Discharge Requirements for the City of Eureka Elk River Wastewater Treatment Plant Humboldt County*, National Pollutant Discharge Elimination System Permit No. CA0024449, Regional Board Order No. R1-2023-0016 (the "2023 NPDES Permit"). The 2023 NPDES Permit rescinds the CDO and incorporates some provisions of the CDO.

F.     **WHEREAS**, Eureka is also a permittee under the State's Sanitary Sewer System Waste Discharge Requirements, SWRCB Order No. WQO 2006-0003 as amended by Order WQ 2013-0058-EXEC ("SSO WDR").

G.       **WHEREAS**, on January 5, 2022, EcoRights provided Eureka, the Administrator and the Regional Administrator for Region IX of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), and the Executive Officer of the Regional Board with a Notice of Violation and Intent to File Suit ("Notice Letter") under Paragraph 505(a) of the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), 33 U.S.C. § 1365(a).

H.       **WHEREAS**, on March 8, 2022, EcoRights, as plaintiff, filed a complaint, in the United State District Court for the Northern District of California ("District Court"), against Eureka, as defendant, Case No. 22-cv-01459 ("Complaint"), commencing legal action pursuant to the citizen suit provisions of the CWA, 33 U.S.C. §§ 1365, *et seq.*, alleging violations of the CWA, the 2016 NPDES Permit and the CDO.

I.       **WHEREAS**, on June 7, 2022, Eureka filed an answer to the Complaint, and on July 29, 2022, filed an amended answer to the Complaint, denying the material allegations of the Complaint and asserting various affirmative defenses, which EcoRights disputes.

J.       **WHEREAS**, the Parties have engaged in mediation, through their authorized representatives, and without either adjudication of the Complaint's claims or admission by Eureka of any alleged violation or other wrongdoing, have agreed to settle EcoRights' claims asserted in the Complaint, without the need for protracted litigation.

K.       **WHEREAS**, all actions taken by the Parties pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

L.       **WHEREAS**, for purposes of settlement only, the Parties waive all objections that they may have to the Court's jurisdiction to enter and retain jurisdiction over this Consent Decree.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties each hereby agree as follows:

## I.

## GENERAL PURPOSES AND OBJECTIVES

1.       The objectives of this Consent Decree are:

a.   To ensure that Eureka continues to use, implement, adaptively manage and

BEST BEST & KRIEGER LLP

improve on ways, means, and methods to reduce Sanitary Sewer Overflows ("SSOs") from the Collection System and discharge violations at the Treatment Plant.

      b.   To further the goals and objectives of the CWA, the NPDES Permit, the CDO and other applicable laws, regulations and permits related to Eureka's Collection System and its Treatment Plant.

      c.   To provide a specific framework and an exclusive Dispute Resolution Process in which the Parties may mutually cooperate to support Eureka's efforts to meet or exceed the requirements of the CWA, the NPDES Permit and the CDO in connection with the Collection System and Treatment Plant.

2.     Accordingly, the Parties agree that, so long as Eureka is implementing the terms and conditions of this Consent Decree and is not in violation hereof, it is the intent of the Parties that Eureka will be on a path to compliance with requirements of the CWA, NPDES Permit, CDO and other applicable laws, regulations and permits related to Eureka's Collection System and its Treatment Plant such that citizen suit enforcement claims against Eureka would not be warranted.

## II.

## DEFINITIONS

3.     Whenever the capitalized terms listed below are used in this Consent Decree, the meanings defined below for those terms shall apply.  Other capitalized terms used in this Consent Decree are defined in other portions of this Consent Decree.

      a.   **"CCTV"** means closed-circuit television.

      b.   **"Cease and Desist Order"** or **"CDO"** means Regional Board Order No. R1-2016-0012, as modified by Regional Board Order No. R1-2020-0020, or as may hereinafter be modified or replaced by the Regional Board.  The CDO was rescinded by the 2023 NPDES Permit.

      c.   **"City"** means the City of Eureka in Humboldt County, California.  City is also referred to in this Consent Decree as **"Eureka."**

      d.   **"Collection System"** means all sewer pipes and lines, manholes or maintenance holes, pump stations, and all appurtenances thereto under ownership of Eureka that

Best Best & Krieger LLP

are used to convey wastewater to the Elk River Wastewater Treatment Plant.  For purposes of this Consent Decree, Collection System does not include Private Laterals, satellite systems or other publicly or privately owned or operated infrastructure that connects to the Collection System.

e.  **"Consent Decree"** means this Consent Decree, any attachments or documents incorporated by reference and any amendments hereto.

f.  **"Day"** means a calendar day.  In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, Federal or State or City holiday or City furlough day, the period runs until the close of business on the next day that is not a Saturday, Sunday, Federal or State or City holiday, or City furlough day.

g.  **"Design Storm"** means the storm event for which the capacity of sewer lines was generally designed, which shall be deemed the 10-year, 24-hour event occurring simultaneously across the City's Sewersheds.

h.  **"Dispute Resolution" or "Dispute Resolution Process"** means the exclusive process to resolve disputes under this Consent Decree as set forth in Part XV of this Consent Decree.

i.  **"Elk River Wastewater Treatment Plant"** or **"Treatment Plant"** means Eureka's wastewater treatment plant located at 4301 Hilfiker Lane, Eureka, California.

j.  **"Effective Date"** means the effective date of this Consent Decree, which shall be the date upon which this Consent Decree is entered by the Court.

k.  **"Fiscal Year"** means the 12-month period beginning July 1st of one year and ending June 30th of the following year.

l.  **"Flow Equalization"** means taking measures such as flow detention or altering the operations of pump stations to modulate flows to reduce peak wet weather flows to or through the Treatment Plant.

m.  **"Flow Storage"** means construction and operation of infrastructure for storing peak wet weather flows for gradual release to or back through the Treatment Plant to reduce peak wet weather flows to or from the Treatment Plant.

n.  **"Force Majeure"** or **"Force Majeure Event"** means any act of God, war,

BEST BEST & KRIEGER LLP

fire, earthquake, windstorm, rainstorm, flood or natural catastrophe or any similar natural event; any civil disturbance, vandalism, sabotage, act of terrorism, pandemic, epidemic, labor dispute, supply chain disruption or other similar human caused or human-health related event; any restraint by court order or similar order of any public authority or agency; and any action or non-action by, or inability to obtain a necessary authorization from any governmental agency, expressly including, but not limited to, the Regional Board, the State Board, the California Coastal Commission, the California State Lands Commission and EPA, which act is beyond the reasonable control of the City and which could not have been reasonably foreseen and prevented by the exercise of due diligence by the City. Delays due to unanticipated or normal increases in costs or expenses associated with the completion of any work or activity under this Consent Decree, changed financial circumstances unrelated to a defined Force Majeure event, the City's failure to make timely and Industry Standard applications and to exercise diligent efforts to obtain permits, or normal inclement weather shall not, in any event, be considered to be circumstances beyond the City's control.

o. **"FOG"** means fats, oil, and grease.

p. **"Force Main"** means the pipelines within the Collection System that convey wastewater under pressure from the discharge side of a pump or pneumatic ejector to a discharge point.

q. **"Gravity Sewer"** means pipes within the Collection System that convey wastewater by gravity flow.

r. **"Illicit Discharges"** means the discharge from a point source to the Collection System of wastewater or storm water other than from authorized connections.

s. **"Industry Standard"** means those methods, techniques, standards and practices which, at the time they are employed and in light of the circumstances known or reasonably believed to exist, are generally recognized and accepted as prudent operations, maintenance, repair and replacement practices in the municipal wastewater industry in the State of California.  Industry Standard includes, but is not limited to, NASSCO guidance documents.

t. **"Interest"** means interest at the rate established by the Secretary of the

1  Treasury pursuant to 28 U.S.C. § 1961, calculated from the date payment is due under this

2  Consent Decree through the date of actual payment.

3        u.   **"Manhole Assessment Condition Protocol"** or **"MACP"** means the

4  condition assessment protocol for manholes established by the NASSCO.

5        v.   **"NASSCO"** means the National Association of Sewer Service Companies,

6  which publishes various sewer system maintenance guidance.

7        w.   **"NPDES"** means National Pollutant Discharge Elimination System.

8        x.   "**NPDES Permit**" means the discharge permit issued to Eureka by the

9  Regional Board via Order No. R1-2023-0016, NPDES Permit No. CA0024449, including any

10  modifications, reissuances or the issuance of a new NPDES Permit that replaces the current

11  NPDES Permit for the Treatment Plant.

12        y.   **"Pipeline Assessment Condition Protocol"** or **"PACP"** means the condition

13  assessment protocol established by the NASSCO.

14        z.   **"Private Lateral"** means the private sanitary sewer lateral or line connecting a

15  home or other structure to the Collection System, extending from the outside of the foundation of

16  the structure to the Collection System, up to and include the wye connection.

17        aa.  **"Private Lateral Ordinance"** means the City's Private Sewer Lateral

18  Inspection and Testing Ordinance adopted by the City on December 17, 2019, through Ordinance

19  893-C.S., and codified in Eureka Municipal Code §§ 50.201 and following, as it may be amended

20  from time to time.

21        bb.  **"RDI/I"** means rainfall derived infiltration and inflow into the Collection

22  System.

23        cc.  **"Regional Board"** means the California Regional Water Quality Control

24  Board, North Coast Region.

25        dd.  **"Sanitary Sewer Overflow"** or **"SSO"** each has the same meaning as those

26  terms are defined in Paragraph A.1 of the SSO WDR, or any amendment thereto, and each

27  currently means: "any overflow, spill, release, discharge or diversion of untreated or partially

28  treated wastewater from a sanitary sewer system.  SSOs include: (i) overflows or releases of

BEST BEST & KRIEGER LLP

untreated or partially treated wastewater that reach waters of the United States; (ii) overflows or releases of untreated or partially treated wastewater that do not reach waters of the United States; and (iii) wastewater backups into buildings and on private property that are caused by blockages or flow conditions within the publicly owned portion of the sanitary sewer system."

ee. **"Sewershed Basins"** or **"Sewersheds"** means one or more of the City's designated drainage basins in the portions of the City comprising the Collection System.

ff. **"Sewer line segment"** means any section of the Collection System located between: (1) two manholes/maintenance holes; (2) a pump station and a manhole/maintenance hole; (3) a pump station or a manhole/maintenance hole and a headworks structure; or (4) a sewer line or pipe otherwise identifiable as a discrete section.

gg. **"SSMP"** means the Sewer System Management Plan developed and implemented by Eureka for the Collection System in accordance with the SSO WDR.

hh. **"Toxicity Identification Evaluation"** or **"TIE"** means a comprehensive study designed according to EPA TIE guidance to identify the chemical constituents which are causing whole effluent toxicity in Treatment Plant effluent.

ii. **"Toxicity Reduction Evaluation"** or **"TRE"** means a comprehensive study designed according to EPA TRE guidance to identify remedial measures to reduce or eliminate whole effluent toxicity in Treatment Plant effluent.

jj. "**EPA**" means the U.S. Environmental Protection Agency.

kk. **"The WDR"** or **"the SSO WDR"** means the Statewide General Waste Discharge Requirements for Sanitary Sewer Systems—State Water Resources Control Board Order No. WQO 2006-0003, as amended by Order No. WQ 2013-0003-EXEC, and as it may subsequently be amended or updated.

ll. **"Waters of the United States"** has the meaning provided in the currently effective EPA and Army Corps of Engineers final regulatory definition of the term, as modified or determined by the federal courts.

mm. **"Year"** means a calendar year, unless otherwise specified.

BEST BEST & KRIEGER LLP

### III.

### JURISDICTION AND VENUE

4.      EcoRights contends that this Court has jurisdiction over the subject matter of the claims for relief asserted in the Complaint pursuant to section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1).  EcoRights further contends that venue is proper in this judicial district pursuant to sections 309(b) and 505(c) of the Clean Water Act, 33 U.S.C. §§ 1319(b) and 1365(c).  EcoRights further contends that it has standing to bring this action.

5.      For purposes of settlement, the Parties waive all objections that they may have to the Court's jurisdiction to enter and retain jurisdiction over this Consent Decree during the term of the Consent Decree.  The Parties agree that the District Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree.

### IV.

### EFFECT OF CONSENT DECREE

6.      This Consent Decree is neither a permit nor a modification of existing permits under any federal, state or local law, and in no way relieves Eureka of its responsibilities to obtain all legally requirement permits, permit modifications and/or other approvals pursuant to, and to comply with, all applicable federal, state and local laws and regulations.

7.      Neither this Consent Decree, nor any payment or action pursuant to this Consent Decree, nor anything in this Consent Decree, represents an admission of liability by Eureka, nor shall constitute evidence of or be construed as a finding, adjudication, acknowledgement or admission by Eureka of or with respect to any fact, finding, issue of law, legal defense, or violation of law, regulation, permit, or administrative order.

8.      This Consent Decree includes a mutual release of liability regarding the allegations in the Notice Letter and Complaint as described in Part XVII of the Consent Decree.

### V.

### EFFECTIVE DATE AND TERMINATION DATE

9.      The effective date of this Consent Decree ("Effective Date") shall be the date on which the District Court signs the order approving the Consent Decree.

10.    This Consent Decree shall terminate ten (10) years ("Termination Date") from the Effective Date, unless there is a pending Dispute Resolution Process, or the resolution of issues resulting from a Dispute Resolution under this Consent Decree is still being implemented as of the Termination Date.  In such case, the Consent Decree shall remain in full force and effect as to the pending issue(s) only, until the issue(s) is resolved either by agreement of the Parties or by formal Dispute Resolution, and the resolution is fully implemented.

**VI.**

**COLLECTION SYSTEM ACTIVITIES**

11.    By December 31, 2026, Eureka will complete a CCTV inspection of the Collection System, along with a PACP rating of the Gravity Sewer portions of the Collection System.  Video Footage and PACP rating will be to NASSCO standards and incorporated into the City's current geographic information system mapping technology ("GIS") system for Collection System maintenance and management purposes.  Eureka's CCTV inspection will include viewing Private Lateral sewer lines from Gravity Sewer to the extent feasible.  The Parties agree that to comply with this provision, Eureka may use any CCTV inspection of portions of the Gravity Sewer that includes a PACP rating and that Eureka has completed or caused to be completed within five (5) years before or after the Effective Date of this Consent Decree.

12.    By December 31, 2026, the City will complete a sewer manhole and maintenance line inspection and condition assessment of all manholes in the Collection System.  The manholes will be provided a MACP rating to NASSCO standards and be incorporated into the City's GIS system for Collection System maintenance and management purposes.  The Parties agree that to comply with this provision, Eureka may use any sewer manhole and maintenance line inspection and condition assessment that includes an MACP rating and that Eureka has completed or caused to be completed within five (5) years before or after the Effective Date of this Consent Decree.

13.    By December 31, 2026, the City will complete smoke testing of the Collection System, including the mapping of areas of possible infiltration or inflow revealed by the smoke testing.  Smoke testing will be performed using NASSCO's Performance Specification Guidelines for Sanitary Sewers.  The Parties agree that to comply with this provision, Eureka may

use any smoke testing performed using NASSCO's Performance Specification Guidelines for Sanitary Sewers that Eureka has completed or caused to be completed within five (5) years before or after Effective Date of this Consent Decree.

14.     Data collected from the work performed under paragraphs 11, 12 and 13 will be used to prioritize future projects during the capital planning process.  Private Laterals discovered to have illegal storm water, sump pump or groundwater drain connections, or otherwise found to be in violation of the City's Private Lateral Ordinance, will be addressed using the City's appropriate enforcement procedures in a manner to curtail Illicit Discharges and/or excessive RDI/I.

15.     By July 1, 2023, Eureka will prepare and provide to EcoRights for review and comment a work plan and schedule for the completion of the CCTV, sewer manhole assessment and smoke testing.  The work plan and schedule shall include interim milestones and targets for completion of the work.  It is generally contemplated that the City will, starting in 2023, target completion of twenty-five percent (25%) of the system each year until December 31, 2026.  Sewer line condition grading for any portion of the system will be completed within six (6) months after CCTV inspection for that portion of the Collection System is completed.  The work plan will identify any existing CCTV inspections and PACP ratings or other work on portions of the Collection System that Eureka has completed or caused to be completed within five (5) years of the Effective Date of the Consent Decree and Eureka may use to satisfy the requirements of this Consent Decree.

16.     On or before December 31, 2027, the City will perform a system-wide proactive cleaning of all Gravity Sewers in the Collection System.

17.     Eureka shall continue to implement its Capital Improvement Program ("CIP"), which is updated annually, related to the Treatment Plant and the Collection System.  In addition, by December 31, 2024, Eureka shall adopt a long-term, twenty (20) year CIP for the Treatment Plant and Collection System.  This long-term CIP will encompass all sewer line projects needed to curb RDI/I to a level that will preclude peak Collection System flow from exceeding Collection System carrying capacity during a Design Storm.  Eureka shall update the long-term CIP annually

BEST BEST & KRIEGER LLP

based on available information, and will perform a larger update by December 31, 2027 based on information collected through the CCTV, manhole assessment and smoke testing work to be completed by December 31, 2026.

18.     By December 31, 2022, the City shall amend its current Private Lateral Ordinance to add a point of sale trigger requiring that any Private Lateral serving a property must be subject to inspection and repair as a condition of sale of any property with a Private Lateral.

19.     By December 31, 2025, the City will implement, using its current GIS, a computerized maintenance management system ("CMMS") approach for its Collection System cleaning program.  This will include implementing a continuously updated computerized data and information system, linked to GIS, to record and track pertinent asset management, operations, and maintenance of the Collection System.

20.     By July 1, 2024, Eureka shall identify and implement measures to achieve an effective root control program.  Eureka shall assess different root control options and implement effective measures to employ those options consistent with Industry Standard.  Eureka shall link its root control program to the information derived from the CCTV inspection and smoke testing work performed pursuant to this Consent Decree.

21.     By July 1, 2024, Eureka shall complete an evaluation of whether the City has sufficient equipment, planning, and training to respond to SSOs and estimate and minimize the volume of sewage spilled, clean-up spilled sewage, and implement repairs and other measures needed to prevent recurrence of SSOs.

22.     By July 1, 2024, Eureka shall complete an evaluation of the causes of SSOs that have occurred during the last five (5) years and will use this evaluation to prioritize future system cleaning and SSO reduction efforts.

23.     By December 31, 2026, Eureka shall identify and implement measures to ensure that the City's Force Mains are in good condition and will not fail before the end of the projected life of the asset.

24.     By December 31, 2025, Eureka shall identify and implement measures to ensure that the City's pump stations within the Collection System are being adequately maintained,

4:22-CV-01459-JST
[PROPOSED] AMENDED CONSENT
DECREE

repaired, replaced, or rehabilitated to ensure reliable performance for the projected life of the asset.

25.     By July 1, 2024, or by the date specified in any amendment or update to the SSO WDR, whichever date is later, Eureka shall reassess and update, as appropriate, its FOG program.

26.     Eureka shall use its best efforts to perform sewer line cleaning consistent with its SSMP, Industry Standard, and the sewer cleaning results matrix attached hereto as Exhibit A.

27.     Eureka shall use its best efforts to perform sewer line repair, replacement, and rehabilitation consistent with its SSMP, Industry Standard, and the sewer line repair, replacement, and rehabilitation matrix attached hereto as Exhibit B.  Eureka shall use ranked PACP scores, sewer main hydraulic constraints and identified non-sewer inflow connection points to develop, prioritize and implement sewer line replacement, repair or rehabilitation projects to correct observed significant defects in relevant Gravity Sewer Lines according to objective timelines.

28.     The Parties anticipate that implementation of the Collection System activities described above will result in future reductions of SSOs in the Collection System.  In order to track the progress of future reductions in SSOs against currently anticipated future reductions, the Parties agree to the "SSO Reduction Benchmarks" attached hereto as Exhibit C.  The Parties agree that in calculating the actual number of SSOs, Eureka shall exclude SSOs caused by storm events exceeding the Design Storm and SSOs not required to be reported under the SSO WDR. The following additional provisions shall apply to the SSO Reduction Benchmarks:

a.  Eureka shall use its best efforts to attain the SSO Reduction Benchmarks.

b.  Eureka shall report its performance against the SSO Reduction Benchmarks in each year's "Annual Summary Report" as required by this Consent Decree.

c.  If Eureka does not, in any one year, perform at or better than the SSO Reduction Benchmarks for that year, Eureka shall prepare an "SSO Reduction Action Plan" and submit that plan to EcoRights by July 1 of the following year.  The SSO Reduction Action Plan will assess the primary causes of the SSOs and shall propose revisions, modifications or additions to the SSMP and a time schedule for performance of such actions.

d.  The SSO Reduction Benchmarks are targets to measure actual performance

BEST BEST & KRIEGER LLP

1  against anticipated SSO reductions, and to promote adaptive management by Eureka. Failure to

2  meet the SSO Reduction Benchmarks does not constitute a violation of the Consent Decree.

3  However, EcoRights may use persistent failures by Eureka to meet the SSO Reduction

4  Benchmarks to support claims in the Dispute Resolution Process that Eureka has failed to comply

5  with other express terms of this Consent Decree designed to reduce SSOs.

6  **VII.**

7  **TREATMENT PLANT AND DISCHARGE ACTIVITIES**

8        29.    By December 31, 2024, Eureka shall complete a study of the feasibility of

9  constructing deep injection wells and injection of sewage effluent into deep injection wells as a

10  means to end the discharges from the Treatment Plant to Humboldt Bay.

11       30.    To evaluate and address discharge options consistent with the Enclosed Bays and

12  Estuaries Policy ("EBEP"), Eureka shall, on or before December 31, 2023, prepared and submited

13  to EcoRights for review and comment a Treatment Plant Discharge to Humboldt Bay Study Work

14  Plan ("Discharge Study Work Plan"). The City completed the Discharge Study Work Plan that

15  complied with Paragraph 31 of the Consent Decree. The Discharge Study Work Plan identified

16  the required studies sufficient to characterize the technical feasibility of the studied alternatives,

17  the cost of such alternatives, the regulatory authorizations needed to implement the alternatives,

18  and the potential environmental benefits and any adverse impacts associated with the alternatives.

19  The Discharge Study Work Plan also included a study completion timeline to evaluate discharge

20  options consistent with the EBEP, including eliminating the discharge, modifying the discharge to

21  enhance water quality and constructing a new Treatment Plant ("EBEP Compliance

22  Options"). Studies, such as deep injection, already addressed in other portions of this Consent

23  Decree, shall be completed by the dates otherwise designated and were incorporated into the

24  Discharge Study Work Plan. In the 2023 NPDES Permit, the Regional Board required a

25  Discharge Study Work Plan that required the City to develop a scope of work and budget

26  (Planning funds, Alternatives Analysis and Preferred Project) to fund a Feasibility Study to

27  comply with Discharge Prohibition 3.1 of the NPDES Permit. The Discharge Study Work Plan

28  followed under this Consent Decree going forward will be the one contemplated and required by

BEST BEST & KRIEGER LLP

the 2023 NPDES Permit which requires as follows:

a.    The Discharge Study Work Plan will require that all studies, including the above deep injection study specified in paragraph 30, be completed by October 1, 2026.  Upon completion, studies will be submitted to EcoRights for review and comment.  EcoRights' comments will be due to City in 30 days.  City will have 30 days to revise studies or respond to EcoRights' comments and finalize studies.

b.    By October 1, 2029, the City shall select its preferred EBEP Compliance Option(s) and submit the preferred EBEP Compliance Option(s) to EcoRights for review and comment. The City may select as one preferred EBEP Compliance Option an approach that maintains the discharge to Humboldt Bay, subject to final regulatory approval from the Regional Board or the State Board, as required.  Approval for the preferred EBEP Compliance Option(s) shall proceed as described pursuant to paragraph 50.

c.    The City will, thereafter, implement the selected EBEP compliance option in accordance with the schedule set forth in the Permit, subject to Force Majeure. This schedule includes the following interim milestones/milestones:

(1) submit 10% of design plans and specifications for construction of the preferred EBEP Compliance Option(s) by December 1, 2031,

(2) completion of an Environmental Impact Report or other California Environmental Quality Act documentation for the preferred EBEP Compliance Option(s) and submittal of all necessary regulatory authorization requests by December 1, 2032,

(3) completion of final design plans and specifications for construction of the preferred EBEP Compliance Option(s) by December 1, 2037, and

(4) a working target for all regulatory authorizations necessary to implement the preferred EBEP Compliance Option(s) of no later than December 1, 2033. This working target deadline may be extended upon agreement of the Parties and a showing by the City in the Dispute Resolution process that completing the preferred alternative by this date is not feasible despite diligent efforts. However,

in no circumstance shall this working target be extended beyond October 1, 2034 unless otherwise agreed upon by the Parties or ordered by the Court upon the City's showing in Dispute Resolution that completing the preferred alternative by this date is not feasible.

31.     On or before July 1, 2028, as required by the NPDES Permit, discharges of untreated or partially treated waste from the Treatment Plant shall be eliminated, subject to Force Majeure, and except as provided in Attachment D, Standard Provisions G (Bypass) and H (Upset) of Eureka's NPDES Permit.  Untreated or partially treated waste means waste that receives a lower level of treatment than secondary as required by Eureka's NPDES Permit and as described in Section II.A of the Fact Sheet to the NPDES Permit.

32.     By December 31, 2023, the City shall submit to EcoRights for review and comment an Outfall Repair Work Plan specifying the measures to be taken by the City to repair or replace components of its existing Treatment Plant outfall such that all components of the outfall are in good working order to continue the required mixing and dilution upon discharge via a multi-port diffuser. The Outfall Repair Work Plan shall include a schedule for completion, including interim milestones, a cost estimate and an identification of all regulatory requirements to implement the work. The Outfall Repair Work Plan will focus only on the repairs to or replacement of components of the existing outfall. Separately, the Discharge Study Work Plan will also address the option of eliminating the discharge to Humboldt Bay. Approval for the Outfall Repair Work Plan shall proceed as described pursuant to paragraph 50. Upon approval of the Outfall Repair Work Plan, the City shall implement the Work Plan in accordance with the schedule set forth in the Work Plan, with a completion date of not later than October 1, 2033. The Parties recognize and agree that implementation of the Outfall Repair Work Plan may become unnecessary if, prior to implementation of the Outfall Repair Work Plan, the City implements the EBEP Compliance Option that ceases the discharge to Humboldt Bay, thus rendering the repair to the existing outfall unnecessary. If this occurs, the Parties shall meet and confer regarding the obligation to implement the Outfall Repair Work Plan and shall resolve any disputes through the Dispute Resolution process.

33.     By December 31, 2023, the City shall complete and submit to EcoRights for review and comment a Treatment Plant Effluent Limitation Compliance Study Work Plan specifying a comprehensive study to assess and address the City's exceedances of Treatment Plant effluent limitations on Treatment Plant discharges (including effluent limitations on discharges of ammonia, fecal coliform, suspended solids, cyanide, residual chlorine, and any other effluent limitation that the City has failed or may fail to meet). The Treatment Plant Effluent Limitation Compliance Study Work Plan shall focus on improvements to the City's current Treatment Plant and operations. Separately, in the Discharge Study Work Plan , the City shall study the following alternatives: eliminating the need to comply with NPDES Permit effluent limitations by implementing discharge of Treatment Plant effluent into deep injection wells (pursuant to paragraphs 30 and 31 above) or constructing a new Treatment Plant (pursuant to paragraph 31 above).  The Treatment Plant Effluent Limitation Compliance Study Work Plan shall specify completing analysis by no later than July 1, 2025 of the technical feasibility of the studied alternatives, the cost of such alternatives, the regulatory authorizations needed to implement the alternatives, the potential environmental benefits and any adverse impacts associated with the alternatives.  Approval for the Treatment Plant Effluent Limitation Compliance Study Work Plan shall proceed as described pursuant to paragraph 50.

34.     By December 31, 2023, Eureka shall prepare and submit to EcoRights for review and comment a TIE/TRE Work Plan. Approval for the TIE/TRE Work Plan shall proceed as described pursuant to paragraph 50. Upon approval of the TIE/TRE Work Plan pursuant to paragraph 50, Eureka shall implement the TIE/TRE Work Plan and by December 31, 2024 complete the TIE and TRE specified by the Work Plan. Based on its TIE and TRE, Eureka shall, if actions or improvements are required, select and inform EcoRights of the City's preferred alternative to reduce or eliminate whole effluent toxicity in Treatment Plant discharges by July 1, 2025. EcoRights shall have the right to comment upon the City's preferred alternative selection pursuant to paragraph 50. Within 120 days of completing the TIE/TRE, Eureka shall, if actions or improvements are required, prepare and submit to EcoRights for review and comment a Whole Effluent Toxicity Reduction Work Plan specifying the measures and time schedule for

BEST BEST & KRIEGER LLP

implementing its preferred whole effluent toxicity reduction preferred alternative. Upon approval of the preferred alternative and the Whole Effluent Toxicity Reduction Work Plan pursuant to paragraph 50, Eureka shall, subject to Force Majeure, implement its preferred alternative to reduce or eliminate whole effluent toxicity in Treatment Plant discharges by December 31, 2026; provided, however, if the preferred alternative to address whole effluent toxicity is to construct a new Treatment Plant, the Parties shall meet and confer to develop a schedule for completion of the new Treatment Plant, which the Parties acknowledge and agree is infeasible to complete by December 31, 2026.

35.     By July 1, 2023, Eureka shall complete a Compliance Monitoring Plan to confirm compliance with all monitoring requirements of the NPDES Permit and submit the Plan to EcoRights for review and comment.  Approval for the Compliance Monitoring Plan shall proceed as described pursuant to paragraph 50. Upon approval of the plan pursuant to paragraph 50, Eureka shall by December 31, 2023 implement the plan and update its monitoring protocols to implement the results of the Compliance Monitoring Plan.

## VIII.

## EFFECT OF NEW OR REISSUED NPDES PERMIT

36.     The Parties acknowledge that Eureka has applied to the Regional Board for a new or reissued NPDES Permit for the Treatment Plant, and further acknowledge that during the term of this Consent Decree the Regional Board may issue a new or reissued NPDES Permit to the City for the Treatment Plant.

37.     If, during the term of this Consent Decree, the Regional Board, State Board, or EPA issues a new or reissued NPDES Permit to the City for the Treatment Plant that becomes final pursuant to applicable law and alters the CWA requirements applicable to the City that are reflected in the requirements of this Consent Decree, this Consent Decree will be modified to reflect those CWA requirements, including, but not limited to, CWA requirements related to discharges to Humboldt Bay. The City shall provide EcoRights with written notice of any new or reissued NPDES Permit and identify any portions of the Consent Decree that the City believes need to be modified to reflect the new regulatory requirements.

38.     Upon written notice from the City to EcoRights regarding any final new or reissued NPDES Permit to the City that the City believes requires modification of the Consent Decree, the Parties will meet and confer within 30 days to discuss and attempt good faith agreement on modifications of this Consent Decree to reflect the terms of the new or reissued NPDES Permit. If the Parties reach consensus concerning modifications to the Consent Decree, they shall submit to the District Court an Amended Consent Decree with a joint request that the Consent Decree be so amended. If the Parties cannot reach consensus, the Parties shall use the Dispute Resolution Process in this Consent Decree to resolve the issue.

## IX.

## FINANCIAL ASSURANCE PLAN

39.     By December 31, 2024, Eureka will develop and submit to EcoRights for review and comment a Financial Assurance Plan that will demonstrate its ability to fund the activities required by this Consent Decree. The Financial Assurance Plan(s) shall include schedule(s) for implementation of the steps specified in the plan. The Financial Assurance Plan shall evaluate:

    a.   The costs of implementing the tasks required by this Consent Decree, coupled with the City's existing and potential future regulatory obligations.

    b.   The current and projected future financial resources available to implement potential tasks, including an evaluation, as appropriate, of potential debt issuance.

    c.   The City's current wastewater rate structure and potential adjustments that may be required over time to ensure adequate financial resources to implement the tasks required by this Consent Decree, along with the City's other regulatory obligations.

40.     The City shall annually evaluate its Financial Assurance Plan and revise it to reflect any new material information concerning (i) the costs of implementing the tasks required by the General WDRs, any Regional Board administrative orders and this Consent Decree; (ii) current and projected future financial resources available to implement potential tasks (including potential debt issuance); and (iii) to what extent the City's current wastewater rate structure may need to be increased to ensure adequate financial resources to implement such tasks. The City shall submit to EcoRights for review and comment any revised Financial Assurance Plans.

BEST BEST & KRIEGER LLP

41.     Approval for the Financial Assurance Plan or any revised Financial Assurance Plan shall proceed as described pursuant to paragraph 50. Upon approval of the Financial Assurance Plan or any revised Financial Assurance Plan pursuant to paragraph 50, the City shall implement the plan(s) in accordance with the schedule(s) set forth in the plan(s).

## X.

## MUTUAL COOPERATION TO IMPLEMENT CONSENT DECREE AND SEEK REGIONAL BOARD ACTION ON NEW NPDES PERMIT

42.     The Parties recognize that Eureka's successful implementation of the actions required by this Consent Decree will require mutual cooperation and good faith support by the Parties, and that the City's manner of implementation is in part dependent on timely action by the Regional Board.  The Parties agree to mutually cooperate and work in good faith to allow Eureka to successfully implement the actions required by this Consent Decree.  With regard to the Regional Board in particular, the Parties recognize and agree that the manner of Eureka's compliance with the Consent Decree may vary depending on the specific terms and conditions of the new NPDES Permit.

43.     To collectively seek timely decisions from the Regional Board to help inform the manner of Eureka's compliance with the Consent Decree, the Parties shall take the following specific actions:

a.   The Parties shall work together to request that the Regional Board take prompt action on issuing Eureka a new NPDES Permit for the Treatment Plant based on Eureka's pending NPDES Permit renewal application. On or about _____, EcoRights and Eureka each sent a letter to the Regional Board requesting that it take initial action on the City's application (i.e., release a draft permit for public review) as soon as possible, and in no event later than ninety (90) days.

b.   If the Regional Board does not take action within the ninety (90) day period, Eureka and EcoRights will each file a petition for review with the State Water Resources Control Board seeking an order directing the Regional Board to take prompt action on the new NPDES Permit.

# XI.

## SUPPLEMENTAL ENVIRONMENTAL PROJECTS

44.     Subject to the terms and conditions of this Consent Decree, Eureka shall implement three separate Supplemental Environmental Projects ("SEPs"), referred to in this Consent Decree as SEP 1, SEP 2 and SEP 3.  Each SEP is intended to secure significant environmental benefits to the waters in and adjacent to Humboldt Bay.  The Parties agree that as of the Effective Date of this Consent Decree, SEPs 1-3 meet the following criteria:

a.   Completion or implementation of the SEPs are not required under any state, local or federal law or regulation.

b.   The SEPs are not required by any other permit or contract to which the City is a party.

c.   The City has not made a decision to complete or implement the SEPs prior to the date the Notice Letter or Complaint was filed.

d.   The City shall not receive reimbursement from any person for SEP expenditures.

45.     SEP 1 is a Private Lateral Repair/Replacement Grant Program to be implemented by Eureka in connection with and to augment the City's existing Private Lateral Repair/Replacement Loan Program.  Eureka shall establish a Private Lateral Repair/Replacement Grant Program and shall fund the program in the amount of One Hundred and Ten Thousand Dollars ($110,000) per year for ten (10) years, for a total expenditure over the life of the Consent Decree of One Million One Hundred Thousand Dollars ($1,100,000).  If Eureka does not expend a total of One Million One Hundred Thousand Dollar ($1,100,000), either through direct grants to private property owners or to contractors working on behalf of private property owners within ten years, Eureka shall convey the unspent amount to the Rose Foundation for Communities and the Environment as an additional payment under SEP 3 below.  In implementing SEP 1, Eureka shall prioritize grants to high priority Sewersheds or Basins where the City is replacing/repairing sewer main lines.  Eureka will promote the Private Lateral Repair/Replacement Grant Program in order to maximize the use of the grant funds.  In addition, Eureka shall implement SEP 1 in conjunction

BEST BEST & KRIEGER LLP

with and as an augmentation to the City's existing Private Lateral Repair/Replacement Loan Program in order to maximize the repair and replacement opportunities available to owners of the Private Laterals.

46.     SEP 2 is the Parking Lot Retrofit Project for the City's Wharfinger Building located at the corner of Waterfront Drive and Marina Way.  The project site is the City's largest paved parking lot and is located adjacent to Humboldt Bay and the Public Marina.  SEP 2 will involve the installation of low impact development ("LID") planters to retain and naturally treat stormwater runoff prior to discharge to Humboldt Bay.  The parking lot currently contains multiple sections of parking rows surrounded by and "islanded" with vegetated areas.  The parking lot is broken into five drainage management areas that slope westerly and southerly from the Wharfinger Building.  Stormwater runoff will be directed along the concrete curbs and into new LID planters.  The LID planters shall be designed to achieve maximum runoff capture, and shall thereby reduce currently untreated runoff to Humboldt Bay.  The runoff's path of travel will be lined with layers of topsoil and mulch and the LID landscaping will be covered by plants native to the Humboldt County Region.  Eureka shall complete SEP 2 by December 31, 2023.  In the event that Eureka expends less than One Hundred Thousand Dollars ($100,000) to complete SEP 2, the City shall pay the difference to the Rose Foundation for Communities and the Environment as an addition to SEP 3 below.  SEP 2 was developed and proposed by the City after the filing of the Notice Letter and Complaint but in connection with the Regional Board's November 16, 2021 notice of initiation of formal enforcement action against Eureka.  The Parties recognize that Eureka intends to use SEP 2 expenditures to resolve in part that formal enforcement action with the Regional Board, and EcoRights agrees not to object to the Regional Board acceptance of SEP 2 as part of a resolution of that enforcement action.  In the event SEP 2 is not approved by the Regional Board as part of its enforcement action, the Parties agree to meet and confer to reach agreement on an alternative SEP acceptable to both EcoRights and the Regional Board.

47.     SEP 3 shall consist of Eureka's payment of the amount of Twenty Seven Thousand Five Hundred Dollars ($27,500) per year for ten (10) years, for a total payment of Two Hundred

1    Seventy Five Thousand Dollars ($275,000), to the Rose Foundation for Communities and the

2    Environment to fund projects to benefit the Humboldt Bay environment.  The Parties agree to

3    mutually cooperate with the Rose Foundation for Communities and the Environment as needed to

4    formalize this annual payment and to direct the funds to projects benefiting Humboldt Bay.

5          48.    Eureka shall provide updates regarding the status of implementation of SEPs 1-3

6    as part of the Annual Summary Report.

7                                    **XII.**

8                   **REVIEW OF CONSENT DECREE DELIVERABLES**

9          49.    EcoRights shall have the right to review and comment on the following documents

10   required of Eureka pursuant to this Consent Decree (collectively "Consent Decree Deliverables"):

11              a.   the work plan and schedule for the completion of the CCTV, sewer manhole

12   assessment and smoke testing required by paragraph 15 of this Consent Decree;

13              b.   any SSO Reduction Action Plan required by paragraph 29(c) of this Consent

14   Decree;

15              c.   the Discharge Study Work Plan required by paragraph 31 of this Consent

16   Decree;

17              d.   the completed studies required by the Discharge Study Work Plan in

18   accordance with paragraph 31(a) of this Consent Decree;

19              e.   the preferred EBEP Compliance Option(s) required by paragraph 31(b) of this

20   Consent Decree;

21              f.   the EBEP Compliance Implementation Work Plan required under paragraph

22   31(c) of this Consent Decree;

23

24              g.   the Outfall Repair Work Plan required by paragraph 34 of this Consent Decree;

25              h.   the Treatment Plant Effluent Limitation Compliance Study Work Plan and the

26   Treatment Plant Effluent Limitation Implementation Plan required by paragraph 35 of this

27   Consent Decree;

28              i.   the TIE/TRE Work Plan required by paragraph 36 of this Consent Decree;

BEST BEST & KRIEGER LLP

1       j.   the TIE/TRE preferred alternative, if any, required by paragraph 36 of this

2    Consent Decree;

3       k.   the Whole Effluent Toxicity Reduction Work Plan, if any, required by

4    paragraph 36 of this Consent Decree;

5       l.   the Compliance Monitoring Plan required by paragraph 37 of this Consent

6    Decree; and

7       m.  the Financial Assurance Plan(s) required by paragraphs 41-43 of this Consent

8    Decree.

9        50.    EcoRights shall have thirty (30) days from receipt of any Consent Decree

10   Deliverable to provide Eureka, in writing, with any comments and recommended revisions

11   regarding the Consent Decree Deliverable. Eureka shall consider each of EcoRights' written

12   comments and recommended revisions and indicate in writing, within thirty (30) days of receipt

13   of EcoRights' written comments and recommended revisions, whether the City accepts the

14   recommended revision, accepts the recommended revision with modification or rejects the

15   recommended revision, and shall explain the basis for its decision. EcoRights may request that

16   the City meet and confer regarding Eureka's response, but Eureka shall have the final initial

17   decision regarding the content of the Consent Decree Deliverable, subject to the formal Dispute

18   Resolution Process of this Consent Decree. Once Eureka informs EcoRights in writing of its final

19   initial decision regarding a Consent Decree Deliverable, EcoRights shall have fifteen (15) days to

20   initiate the Dispute Resolution Process regarding the City's initial decision. The Parties recognize

21   that professional judgments may differ, and agree to work in good faith to resolve disputes over

22   the Consent Decree Deliverables before invoking the formal Dispute Resolution Process. All

23   Deliverables shall be deemed approved upon occurrence of any of the following: (a) EcoRights

24   declines to comment on Eureka's submittal within 30 days of receipt, (b) Eureka revises its

25   submittal to adopt EcoRights' suggested revisions, (c) EcoRights did not timely initiate the

26   Dispute Resolution Process; (d) in Dispute Resolution, the Parties reach agreement concerning

27   the submittal, or (e) the Court issues a Dispute Resolution ruling resolving the appropriate content

28   of the submittal.

BEST BEST & KRIEGER LLP

4:22-CV-01459-JST
[PROPOSED] AMENDED CONSENT
DECREE

## XIII.

## ANNUAL SUMMARY REPORT

51.    Starting December 31, 2023, and thereafter on December 31 of each following year during the term of this Consent Decree, Eureka shall submit to EcoRights an Annual Report describing implementation of actions required by this Consent Decree. The Annual Reports shall:

a.    Describe the status of any action required to be completed by Eureka pursuant to the Consent Decree in the year covered by the Annual Summary Report.

b.    Provide a summary of Eureka SSO performance for the year as compared with the SSO Performance Benchmarks, and explain any actions taken to address any deviations from the SSO Performance Benchmarks.

c.    Provide a summary of the status of SEP implementation.

d.    Provide a summary of any Notices of Violation or other enforcement related correspondence from the Regional Board regarding the Treatment Plant or the Collection System, as well as any material updates regarding the City's new NPDES Permit.

e.    Include as attachments any correspondence or reports submitted to or received from the Regional Board concerning the City's proper operation, maintenance and capital improvement of its Treatment Plant and Collection System.

f.    Provide a summary of the City's implementation of its CIP regarding the Treatment Plan and Collection System, as well as information on general City expenditures on the Treatment Plant and Collection System.

## XIX. STIPULATED PAYMENTS

52.    Eureka shall pay the following stipulated payments if Eureka fails to submit any of the following Consent Decree Deliverables by the deadlines specified in this Consent Decree:

| Period of Noncompliance | Penalty Per Violation Per Day |
|---|---|
| Days 1-30 | $275 |
| Days 31-60 | $550 |
| Days over 60 | $1030 |

4:22-CV-01459-JST
[PROPOSED] AMENDED CONSENT
DECREE

53.     If the City fails to submit the Consent Decree Annual Reports by the deadlines provided herein, the City shall pay stipulated payments of one hundred and forty dollars ($140) per day.

54.     Stipulated payments shall not begin to accrue unless and until EcoRights provides written notice to Eureka that the applicable Consent Decree Deliverable or Annual Report is late and Eureka fails to provide such report within three business days following receipt of EcoRights' written notice. Stipulated payments shall continue to accrue through the date the late Consent Decree Deliverable or Annual Report is submitted to EcoRights. Stipulated payments shall not continue to accrue during any revision process or Dispute Resolution proceeding under Part XXV (DISPUTE RESOLUTION) and shall not be imposed if EcoRights agrees to the revision or if EcoRights fails to prevail in the dispute.

55.     The City shall pay stipulated payments to the Rose Foundation for Communities and the Environment to be used to supplement funding for SEP 3.  Payments shall be due within forty-five (45) days of written demand from EcoRights, unless the City seeks Dispute Resolution concerning the demand for payment. The City shall provide notice to EcoRights of any stipulated payments made pursuant to this Part for approval in accord with Part XXIII (NOTICES AND SUBMISSIONS).

56.     If the City fails to pay any of the payments required by this Consent Decree within thirty (30) days of the date such payments are due, Interest shall accrue from the date payment was due or written notice of the violation and amount of payment was received, until the City makes the required payment.

## XIV.

## FEES AND COSTS

57.     In full and final settlement of all of EcoRights' attorneys', consultants', experts' or any other type of fees, expenses and costs to which EcoRights could have claimed entitlement in connection with any and all claims alleged in the Notice Letter and in the Complaint, or which could have been alleged based on the common nucleus of operative fact alleged in the Notice Letter and Complaint, Eureka shall pay EcoRights the sum of Three Hundred Twenty Six

Thousand Two Hundred Dollars ($326,700).  EcoRights shall and does waive any further claim

for attorneys', consultants', and experts' fees and costs related to the claims alleged in the Notice

Letter and the Complaint, except for the monitoring cost and other items recoverable in

accordance with this Consent Decree.  Eureka shall make this payment to EcoRights within thirty

(30) days of the Effective Date of this Consent Decree.  Payment shall constitute full payment of

all fees, costs and expenses of any kind incurred by EcoRights in this action that have or could

have been claimed in connection with the common nucleus of operative fact alleged in the Notice

Letter and Complaint.

58.     In full and final settlement of all of EcoRights' attorneys', legal and technical

consultants', and experts' fees, expenses and costs, and any other costs and expenses incurred by

EcoRights or its designees in connection with reviewing and commenting upon Consent Decree

Deliverables, reviewing Annual Summary Reports, and participating in meet and confer informal

Dispute Resolution processes, Eureka shall pay EcoRights Fifteen Thousand Dollars ($15,000)

per year for ten (10) years.  Eureka shall make the first monitoring payment within 30 days of the

Effective Date.  Eureka shall thereafter annually make the monitoring payment on or before the

anniversary of 30 days from the Effective Date.

**XV.**

**<u>DISPUTE RESOLUTION PROCESS</u>**

59.     The Dispute Resolution Process in this portion of the Consent Decree shall be the

exclusive mechanism to resolve any disputes arising under the Consent Decree.

60.     Any dispute that arises under this Consent Decree shall initially be subject to a

period of informal negotiations, which shall not extend beyond forty-five (45) days unless the

Parties otherwise mutually agree in writing to an extension of the informal negotiation period.

The dispute shall be considered to have arisen on the date one Party receives written notification

from the other, specifically referencing a dispute subject to these Dispute Resolution provisions.

If the dispute is resolved through these informal negotiations, neither Party shall be entitled to

attorneys' fees and costs as provided in paragraph 64.

61.     If the Parties cannot resolve a dispute by informal negotiation, either Party may

BEST BEST & KRIEGER LLP

require that the dispute proceed to mediation. Such Party requesting mediation shall send written notice to the other Party of its request to proceed with mediation. To avoid unresolved disputes, a Party seeking mediation must request it within fifteen (15) days of the end of the informal negotiating period. The Parties shall mutually agree on a mediator. The cost of the mediation shall be initially borne by the Party requesting mediation, unless alternative arrangements are agreed to in writing by the Parties. If either Party is dissatisfied with the mediation process after sixty (60) days, such Party may file a motion with the District Court. To avoid unresolved disputes, a Party seeking District Court review must file the motion within fifteen (15) days of the end of the mediation period. The motion shall refer to this portion of the Consent Decree and shall set forth the nature of the dispute and a proposal for its resolution. The opposing Party shall have thirty (30) days in which to file a response with an alternate proposal for resolution.  The District Court shall determine the dispute in the manner most in keeping with the objectives, goals and requirements of this Consent Decree.

62.     The filing of a motion with the District Court does not in itself postpone any deadline in this Consent Decree.  If EcoRights prevails in the dispute, the deadlines shall remain the same.  If the City prevails in the dispute, deadlines relevant to the issue in dispute shall be tolled for the time period when the issue was in dispute, except that deadlines shall not be tolled for any measures or actions set forth in the City's proposal for dispute resolution that are consistent with EcoRights' proposal for dispute resolution, provided that such consistent measures or actions are severable from the disputed measures.

63.     The prevailing Party in any dispute shall be entitled to attorneys' fees and costs in accordance with the standard established by 33 U.S.C. § 1365(d).

## XVI.

## LODGING OF CONSENT DECREE; DISMISSAL OF COMPLAINT

64.     EcoRights shall submit a copy of this Consent Decree to the U.S. Department of Justice ("DOJ") and the EPA within three (3) days of its execution by the Parties for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by the certified return receipts, copies of which shall

be provided by EcoRights to the City upon request.  In the event that DOJ or EPA comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by DOJ or EPA.  If the Parties cannot resolve the issue(s), and the District Court chooses not to order entry of this Consent Decree, this Consent Decree is null and void unless the Parties mutually agree in writing upon a different settlement vehicle, and EcoRights files, and the Court accepts, a dismissal with prejudice of the Complaint based on the different settlement vehicle agreed to by the Parties.

65.    EcoRights shall lodge this Consent Decree with the District Court within three (3) Court days of the Parties' execution of the Consent Decree.  After the expiration of the DOJ and EPA review period specified in 40 C.F.R. § 135.5 (and, if necessary, after the completion of the meet and confer process referred to in the preceding paragraph), EcoRights shall promptly request the District Court to enter the [Proposed] Order approving and requiring the performance of the Consent Decree and dismissing, with prejudice, the Complaint.

## XVII.

## MUTUAL RELEASE OF LIABILITY

66.    In consideration of the benefits and burdens of this Consent Decree, upon the Effective Date of this Consent Decree, the Parties, and their owners, members, successors and assigns, directors, officers, agents, representatives, attorneys, affiliates, consultants and employees hereby fully release each other and their respective owners, members, successors and assigns, officers, directors, agents, representatives, attorneys, affiliates, consultants, employees and all persons, firms and corporations having an interest in them, from any and all claims, causes of action and violations for injunctive and declaratory relief, damages, penalties, fines, sanctions, mitigation fees, attorneys' fees, expert fees, and consultants' fee, and other technical and litigation costs and expenses, and any other sum incurred or claimed or which could have been claimed in connection with the common nucleus of operative fact alleged in the Notice Letter and Complaint, including but not limited to the alleged failure, violation, or continuing violation of Eureka to comply with the CWA, Porter-Cologne, the City's NPDES Permit, the CDO, the WDR, the SSMP, the City's Municipal Ordinances, or any other general or individual discharge permit

BEST BEST & KRIEGER LLP

related to the Notice Letter and Complaint, from the date of the Notice Letter through the Termination of the Consent Decree.  This release includes a release and covenant not to sue during the term of the Consent Decree for any claims of injunctive relief, damages, penalties, fines, sanctions, mitigation fees (including fees of attorneys, experts, consultants and others), costs, expenses or any other sum arising from, incurred in connection with or based on facts or allegation which were made or could have been made in the Notice Letter or the Complaint.

## XVIII.

## FORCE MAJEURE EVENTS

67.     Eureka's obligation to comply with one or more provisions of this Consent Decree shall be deferred, to the extent and for the duration that the delay in compliance is caused by a Force Majeure Event, or excused, if a Force Majeure Event renders compliance impossible.

68.     If Eureka becomes aware of a Force Majeure Event that may delay or excuse the City's compliance with one or more provisions of this Consent Decree, the City shall do the following:

a.   Eureka shall provide written notice to EcoRights within thirty (30) days of the date the City first became aware of the Force Majeure Event.

b.   Eureka's notice shall specifically identify the provision or provisions of this Consent Decree that may be delayed or excused by the Force Majeure Event, describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by the City to prevent or minimize the delay, the schedule for such measures to be taken, and the anticipated date of compliance.  If Eureka believes that the Force Majeure Event, despite City efforts to prevent or minimize it, renders the provision unachievable, the City shall provide an explanation of that position in the notice.

c.   The Parties shall thereafter meet and confer in good faith concerning the Force Majeure Event, and agree upon, if feasible, new performance deadlines for the provision or provisions of the Consent Decree that are affected by the Force Majeure Event.  If the Parties reach agreement concerning the Force Majeure Event and the effect of this Event, the Parties shall submit a stipulation to that effect to the Court, which shall be considered conclusive as to

4:22-CV-01459-JST
[PROPOSED] AMENDED CONSENT
DECREE

1   whether the City's noncompliance with the Consent Decree may be excused or modified due to

2   force majeure.

3            d.   If the Parties cannot agree on a new performance, or if EcoRights disagrees

4   with the City's notice of the Force Majeure Event, any Party may submit the issue to the District

5   Court for resolution through the Dispute Resolution Process.

6                                      **XIX.**

7                          **NOTICES AND SUBMISSIONS**

8       69.    Any notifications, submissions, or communications required to be provided under

9   this Consent Decree to or by a Party shall be, to the extent feasible, sent via electronic mail

10   transmission to the e-mail addresses listed below (electronic return receipt requested) or, if

11   electronic transmission is not feasible, via U.S. Mail, Overnight Mail to the addresses below.

12   Any change in the individuals or addresses designated by any Party must be made in writing to all

13   Parties.

14            a.   IF TO THE CITY:

15

16       Brian Gerving
         Director of Public Works
17       City of Eureka
         531 K Street
18       Eureka, California 95501
         Email:  bgerving@eurekaca.gov

19       cc:    Autumn E. Luna
         City Attorney
20       City of Eureka
         531 K Street
21       Eureka, California 95501
         Email:  aluna@eurekaca.gov
22

23

24            b.   IF TO ECORIGHTS:

25

26       James Lamport
         Fredric Evenson
27       Ecological Rights Foundation
         Email: jimlamport@humboldt.net, evenson@ecologylaw.com

28       cc:    Christopher A. Sproul

82592.00202\42368163.3

- 31 -

BEST BEST & KRIEGER LLP

Environmental Advocates
5135 Anza Street
San Francisco, California 94121
Email: csproul@enviroadvocates.com

Note: the City need only send paper copies to the Environmental Advocates address and need not send a duplicate paper copy to Ecological Rights Foundation.

70.     Written notices submitted in accordance with this Consent Decree shall be deemed submitted on the date electronically transmitted, or, if sent via U.S. Mail, Overnight Mail, on the date postmarked or delivered via hand.  Notwithstanding the sender's receipt of a successful delivery notification, a recipient that fails to receive the submission may request delivery by other means, but such request does not affect the timeliness of the original submission.

## XX.

## PAYMENTS

71.     The City shall make all payments to EcoRights required by the Consent Decree to the Environmental Advocates Attorney Client Trust Account and Environmental Advocates shall thereafter disburse such payments in accordance with EcoRights' separate written instructions to Environmental Advocates. The City shall send payments either via electronic funds transfer as instructed in separate writing by Environmental Advocates or via certified mail, return receipt requested, to the following address:

Christopher A. Sproul
Environmental Advocates
5135 Anza Street
San Francisco, California 94121

72.     The City shall make all payments to the Rose Foundation for Communities required by the Consent Decree by electronic funds transfer as directed by the Rose Foundation for Communities and the Environment or by check sent to:

Rose Foundation for Communities and the Environment
201 4th Street, Suite 102

BEST BEST & KRIEGER LLP

Oakland, CA 94607

Eureka shall concurrently send notice to EcoRights that it has sent any required payments to the Rose Foundation for Communities and the Environment.

## XXI.

## GENERAL PROVISIONS

73. The Parties stipulate that, and the Court orders, notwithstanding dismissal of the Complaint, the District Court shall retain jurisdiction to enforce the terms and conditions of this Consent Decree and to resolve disputes arising under the Consent Decree up to and including the Termination Date.

74. The language of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms specifically defined herein. This Consent Decree is the result of mutual negotiations and drafting, and, therefore, shall not be construed for or against any Party because that Party drafted the Consent Decree.

75. The laws of the United States and as applicable the State of California as an authorized state to administer the NPDES program shall govern this Consent Decree.

76. In the event that any provision, subparagraph, paragraph, or sentence of this Consent Decree is held by a court of competent jurisdiction to be unenforceable, the validity of the remaining enforceable provisions shall not be adversely affected, unless the unenforceable provision is so material to the other portions of the Consent Decree that it cannot be severed from the remaining provisions.

77. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, electronic or scanned copies (i.e., pdf) or other facsimile copies of original signatures shall be deemed to be originally executed counterparts of this Consent Decree.

78. No major modifications to this Consent Decree shall be valid unless in writing, mutually agreed to and executed by the Parties, and entered by order of this Court modifying this Consent Decree. The Parties may mutually agree in writing to minor modifications of this

BEST BEST & KRIEGER LLP

Consent Decree without further order of the Court and such written minor modifications shall be deemed incorporated into this Consent Decree. The Parties may stipulate that requirements of this Consent Decree have been completed and such stipulation shall be deemed binding upon filing with the Court.

79.     The Parties agree that a Party may waive in writing any one or more of the provisions of this Consent Decree, other than obligations independently derived from applicable law despite the provisions of this Consent Decree.  Such a written waiver must be delivered in accordance with the notice provisions of this Consent Decree.  No waiver of a breach, failure of condition, or any right or remedy contained in or granted by the provisions of this Consent Decree is effective unless in writing and signed by the Party waiving the breach, failure, right or remedy. No waiver of a breach, failure of condition or right or remedy is or may be deemed a waiver of any other breach, failure, right or remedy, whether similar or not.  In addition, no waiver will constitute a continuing waiver unless the writing so specifies.  As to any condition that is an obligation of or benefit to all Parties, a waiver of that condition will be effective only if made by all Parties.

80.     This Consent Decree constitutes a full and final settlement of all issues raised or that could have been raised in the Notice Letter and Complaint.

81.     This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties related to the Notice Letter and Complaint, and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject of this Consent Decree.

82.     The undersigned representatives of EcoRights and Eureka each certify that he/she is fully authorized by the Party whom he/she represents to enter into the terms and conditions of this Consent Decree.

83.     During the life of this Consent Decree, the City shall preserve at least one legible copy of all non-privileged records and documents, including computer-stored information, in its possession that document the City's performance of its obligations under this Consent Decree.

1

2          **IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the

3     date first set forth below.

4

5                              SIGNATURES ON FOLLOWING PAGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4:22-CV-01459-JST
[PROPOSED] AMENDED CONSENT
DECREE

ECOLOGICAL RIGHTS FOUNDATION:

By: _____        Dated: _____
      James Lamport, Executive Director

Approved as to form:


By: _____
      Christopher Sproul, Environmental Advocates


CITY OF EUREKA:

By: _____        Dated: _____
      Susan Seaman, Mayor

CITY OF EUREKA:

By: _____        Dated: _____
      Miles Slattery, City Manager

Approved as to content:

By: _____
      Brian Gerving, Director of Public Works

Approved as to form:

By: _____
      Autumn E. Luna, City Attorney

Attest:

By: _____
      Pamela J. Powell, City Clerk

BEST BEST & KRIEGER LLP

**IT IS SO ORDERED:**

Dated: _____, 2022     By: _____
                                              JON S. TIGAR
                                              UNITED STATES DISTRICT JUDGE

# EXHIBIT A

| Sewer Cleaning Result Matrix—Exhibit A | | | | |
|---|---|---|---|---|
| | **Clear** | **Light** | **Moderate** | **Heavy** |
| **Debris** | No observable debris | Minor amount of debris<br><br>1 pass | Moderate amounts of debris<br><br>2-3 passes | Significant amounts of debris<br><br>More than 4 passes<br><br>Operator concern for future stoppage |
| **Grease** | No observable grease | Minor amounts of grease<br><br>15 minutes or less to clean<br><br>1 pass | Small "chunks" No "logs"<br><br>15-30 minutes to clean<br><br>2-3 passes | Big "chunks" or "logs"<br><br>More than 4 passes<br><br>Operator concern for future stoppage |
| **Roots** | No observable roots | Minor amounts of roots<br><br>1 pass | Thin stringy roots<br><br>No "clumps"<br><br>2-3 passes | Thick roots<br><br>Large "clumps"<br><br>More than 4 passes<br><br>Operator concern for future stoppage |
| **Debris:** Structural pipe fragments soil, rock, etc. | No observable materials | Specify material (if possible)<br><br>Minor amounts of material | Specify material<br><br>Moderate amounts of material per line segment | Specify material<br><br>Significant amounts of material per line segment<br><br>Operator concern for future stoppage |
| **Action** | Decrease frequency to next lower frequency after 3 consecutive results (e.g. 180 days to 1 year) | Continue current maintenance frequency | If already in the Priority Location Cleaning Program, increase current maintenance frequency to next higher frequency (e.g. 180 days to 90 days, or more frequently if necessary) | Increase current maintenance frequency to next higher frequency (e.g. 180 days to 90 days or more frequently if necessary) |

# EXHIBIT B

| Sewer Line Repair, Replacement, and Rehabilitation Matrix—Exhibit B | | | |
|---|---|---|---|
| **Observed Defect** | **Corrective Action** | **Time Frame (from date defect observed)** | **Other Action** |
| PACP Grade 4 or 5 Maintenance Defect | Clean sewer | 30 days | Place on hot spot cleaning or mechanical root control schedule |
| PACP Grade 3 Maintenance Defect | Clean sewer | 4 months | Place on hot spot cleaning or mechanical root control schedule |
| PACP Grade 5 Structural Defect – Immediate Failure Likely | Repair rehabilitate or replace sewer | ASAP (no more than 90 days) | N/A |
| PACP Grade 5 Structural Defect – Immediate Failure Unlikely | Repair, rehabilitate, replace, or re-inspect sewer | 2 years | Re-inspect within one year if corrective action not taken |
| PACP Grade 4 Structural Defect | Repair, rehabilitate, or re-inspect sewer | 5 years | Re-inspect within three years if corrective action not taken |
| PACP Grade 1 or 2 or 3 Structural Defect or PACP Grade 1 or 2 Maintenance Defect | Inspect Sewer with CCTV | CCTV as recommended in PACP | N/A |

# EXHIBIT C

| SSO Reduction Benchmark – Exhibit C | | |
|---|---|---|
| Year | Number SSOs | SSOs/100 miles/yr |
| 2023 | 10 | 8.3 |
| 2024 | 9 | 7.5 |
| 2025 | 8 | 6.7 |
| 2026 | 7 | 5.8 |
| 2027 | 6 | 5.0 |
| 2028 | 5 | 4.2 |
| 2029 | 4 | 3.3 |
| 2030 | 3 | 2.5 |
| 2031 | 3 | 2.5 |
| 2032 | 3 | 2.5 |