1

2

3

4
UNITED STATES DISTRICT COURT

5
NORTHERN DISTRICT OF CALIFORNIA

6

7
ECOLOGICAL RIGHTS FOUNDATION,                Case No. 22-cv-01459-JST

8
              Plaintiff,

9
    v.                                                      **ORDER GRANTING DEFENDANT CITY OF EUREKA'S MOTION TO MODIFY CONSENT DECREE**

10
CITY OF EUREKA,
Re: ECF No. 42

11
              Defendant.

12

13
Before the Court is Defendant City of Eureka's ("City") motion to modify consent decree.

14
ECF No. 42.  The Court will grant the motion.

15
**I.      BACKGROUND**

16
The underlying facts and procedural history are not in dispute, and the Court takes the

17
following summary from the parties' briefs.

18
The City operates the Elk River Wastewater Treatment Plant ("WWTP") under a Clean

19
Water Act ("CWA") Permit issued by the California Regional Water Quality Control Board,

20
North Coast Region ("Regional Board").  Plaintiff Ecological Rights Foundation ("EcoRights")

21
filed this action in March 2022, alleging that the City's operation of the WWTP violated the

22
CWA.  ECF No. 1.  The parties participated in mediation on September 2, 2022 and reached an

23
agreement in principle to resolve the action.  ECF Nos. 34, 37.  On November 17, 2022, the

24
parties filed a proposed consent decree, ECF No. 38, and on January 27, 2023, the Court entered

25
the Consent Decree as proposed.  ECF No. 40.

26
Paragraph 39 of the Consent Decree provides:

27
> If, during the term of this Consent Decree, the Regional Board, State
> Board, or EPA issues a new or reissued NPDES [National Pollutant

28
> Discharge Elimination System] Permit to the City for the Treatment

*United States District Court*
*Northern District of California*

Plant that becomes final pursuant to applicable law and alters the CWA requirements applicable to the City that are reflected in the requirements of this Consent Decree, this Consent Decree will be modified to reflect those CWA requirements, including, but not limited to, CWA requirements related to discharges to Humboldt Bay. The City shall provide EcoRights with written notice of any new or reissued NPDES Permit and identify any portions of the Consent Decree that the City believes need to be modified to reflect the new regulatory requirements.

ECF No. 40 ¶ 39.

Until 2023, the City operated the WWTP under an NPDES Permit issued in 2016.[1] In March 2023, the Regional Board issued a new draft of the City's NPDES Permit. ECF No. 42 at 8. After a notice and comment process (in which EcoRights participated), the Regional Board issued the City a new NPDES Permit in October 2023. *Id.* at 9. On November 2, 2023, EcoRights appealed the issuance of the 2023 NPDES Permit to the State Board. The State Board took no action on the appeal for 90 days and thus constructively denied it. *Id.* The 2023 NPDES Permit

On March 1, 2024, EcoRights filed suit against the Regional Board in Sacramento County Superior Court, *Humboldt Waterkeeper et al. v. North Coast Regional Water Quality Control Board et al*, Case No. 24WM00044, alleging that the Board violated the CWA by "set[ting] an arbitrary, inadequately considered and supported, and overlong compliance schedule," "weaken[ing] protections against the prohibition on discharge of partially/inadequately-treated sewage; "remov[ing] the prohibition on sanitary sewer overflows; and otherwise failing to comply with the law "in numerous respects." ECF No. 42-4 ¶ 121. As of the filing of this motion, the lawsuit remained pending. *See* ECF No. 42 at 7 ("The state court may not issue judgment and rights to appeal may not be exhausted for another three years.").

The Consent Decree, paragraph 39, requires the City to "provide EcoRights with written

---

[1] The City requests that the Court take judicial notice of the 2016 NPDES Permit, the 2023 NPDES Permit, other orders and reports from the Regional Board, and the Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief (both the original and the first amended versions) filed by EcoRights in its lawsuit against the Regional Board. ECF No. 42-1. For its part, EcoRights attaches to its opposition a copy of its comments to the Regional Board requesting changes to the 2023 NPDES Permit as well as a copy of a State Board policy concerning enclosed bays and estuaries. ECF No. 43-1. Neither party objected to the Court's consideration of the other's materials. The Court thus grants the City's request for judicial notice and has considered both parties' attached documents in reaching the findings in this Order.

United States District Court
Northern District of California

1  notice" of the new permit and "identify [the] portions of the Consent Decree that the City believes

2  need to be modified to reflect the new regulatory requirements."  ECF No. 40 ¶ 39.  The City

3  complied with these requirements.  ECF No. 42 at 12.  The parties met and conferred, but they

4  were unable to reach agreement because they disagreed on whether the 2023 NPDES Permit is

5  "final pursuant to applicable law" for the purpose of the Consent Decree.

6       The City filed the instant motion on October 4, 2024.  ECF No. 42.  EcoRights opposed the

7  motion, ECF No. 43, and the City replied.  ECF No. 44.  The Court took the motion under

8  submission on December 11, 2024 without a hearing.  ECF No. 45.

9  **II.    JURISDICTION**

10      The Court has jurisdiction under 33 U.S.C. § 1365(a)(1) and 28 U.S.C. § 1331.

11 **III.    LEGAL STANDARD**

12      Federal Rule of Civil Procedure 60(b) authorizes a court to modify a consent decree for

13 any of several enumerated reasons or "any other reason that justifies relief."  Under Rule 60(b),

14 the party seeking modification of a consent decree bears the burden of establishing that "a

15 significant change in circumstances warrants revision of the decree."  *Rufo v. Inmates of Suffolk*

16 *Cnty. Jail*, 502 U.S. 367, 383 (1992).  But a district court also has inherent authority to modify a

17 consent decree in appropriate circumstances "even in the absence of express authorization in the

18 decree or request from the parties."  *Keith v. Volpe*, 784 F.2d 1457, 1461 (9th Cir. 1986) (citing

19 *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932)).  The language of the consent decree itself

20 can also provide a basis for modification.  *See, e.g.*, *Earth Island Inst., Inc. v. So. Cal. Edison*, 166

21 F. Supp. 2d 1304, 1309 (S.D. Cal. 2001) ("Moreover, the Decree's own dispute resolution

22 provisions . . . support the Court's authority to modify the Consent Decree").

23      "In construing consent decrees, courts use contract principles."  *Thompson v. Enomoto*,

24 915 F.2d 1383, 1388 (9th Cir. 1990); *see also Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996)

25 (noting that "[a] consent decree is . . . in some respects contractual in nature" and that "[c]ourts

26 must find the meaning of a consent decree within its four corners") (internal citations and

27 quotations omitted)).  If the district court determines the consent decree should be modified, it

28 "must then determine whether the proposed modification is suitably tailored to resolve the

*United States District Court*
*Northern District of California*

3

1   problems created by the changed factual or legal conditions." *United States v. Asarco, Inc.*, 430

2   F.3d 972, 979–80 (9th Cir. 2005).

3   **IV.    DISCUSSION**

4       **A.    Finality of the 2023 NPDES Permit**

5       The question before the Court is whether the *Humboldt Waterkeeper* lawsuit, filed by

6   EcoRights against the Regional Board over its issuance of the 2023 NPDES Permit, renders that

7   Permit not "final pursuant to applicable law" for the purpose of paragraph 39 of the Consent

8   Decree.  EcoRights argues that until its lawsuit is resolved, the 2023 NPDES Permit is not "final

9   pursuant to applicable law," and the Consent Decree need not be modified to match the Permit's

10  requirements.  ECF No. 43 at 8–12.  The City responds that the 2023 NPDES Permit is "final

11  pursuant to applicable law" despite EcoRights's ongoing lawsuit, and consequently paragraph 39

12  requires modification of the Consent Decree to bring it into alignment with the requirements set

13  forth in the 2023 NPDES Permit.  ECF No. 42 at 12–16.

14      The City has the better argument.  The Regional Board issued the 2023 NPDES Permit

15  after the completion of its administrative proceedings, including publication of a draft permit,

16  receipt of comments regarding the draft, issuance of the final permit, and constructive denial of

17  EcoRights's appeal to the State Board.  ECF No. 42 at 8–9.  There were no further steps that

18  EcoRights—or any party—could have taken with respect to the administrative proceedings, as

19  EcoRights acknowledges in its petition in the *Humboldt Waterkeeper* lawsuit.  *See* ECF No. 42-4

20  at 139, ¶ 14 ("Petitioners have exhausted any and all available administrative remedies to the

21  extent required by law.").  Indeed, without a final administrative decision, EcoRights would not

22  have been able to file its *Humboldt Waterkeeper* action, because the code sections that authorize

23  judicial review of administrative actions require first that the administrative action be "final."  *See*

24  Cal. Code Civ. Proc. § 1094.5 (authorizing judicial review of "the validity of any *final*

25  administrative order or decision" (emphasis added); Cal. Code Regs. tit. 23, § 2050.5(e), (g)

26  (discussing petitions filed by "[a] party aggrieved by a regional board *final* decision or order")

27  (emphasis added).

28      EcoRights urges that under California contract interpretation principles, the Court should

United States District Court
Northern District of California

4

apply the dictionary definition of the word "final" in interpreting the Consent Decree and that, because the *Humboldt Waterkeeper* lawsuit might someday alter the requirements in the 2023 NPDES Permit, the permit cannot be "final" according to the dictionary definition.  ECF No. 43 at 8–10 ("[T]he Regional Board's permit issuance decision at this point has not come 'at the end' of the permit matter and is not 'the last in a series or process' or the 'ultimate . . . result of a process' that has set Eureka's CWA obligations beyond any further likelihood of alteration" (quoting *Final*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/final)).  But the facts show that the 2023 NPDES Permit is, in fact, the "ultimate result of a process"—namely, the Regional Board's administrative process—as evidenced by EcoRights's averment in its *Humboldt Waterkeeper* complaint that it had exhausted all remedies in that process.  Thus, the dictionary definition confirms, rather than disproves, that the 2023 NPDES Permit is "final" for the purpose of paragraph 23 of the Consent Decree.

EcoRights's other arguments fare no better.  Its contention that the *Humboldt Waterkeeper* lawsuit "has substantial merit and a reasonable likelihood of causing the 2023 permit to be set aside," ECF No. 43 at 12, is irrelevant because, as already explained, that lawsuit seeks to set aside the Regional Board's "final" agency action; it does not render that action non-final and indeed could not even have been brought unless the action was final.

EcoRights also argues that principles of comity and abstention counsel against modifying the Consent Decree until the state court has an opportunity to decide the *Humboldt Waterkeeper* lawsuit.  *Id.* at 19–20 ("Abstention doctrine provides for respect for state court decisions, state policies, and federalism concerns more generally by avoiding federal court decisions that, *inter alia*, will or may conflict with state court decisions." (citations omitted)).  If anything, comity principles counsel in favor of modification of the Consent Decree entered in this federal lawsuit to bring it into alignment with the requirements set by a state entity, rather than allowing the continued existence of two competing (and possibly incompatible) sets of requirements.

Finally, EcoRights argues that because "a deal is a deal," the City should be held to the agreements it made in the Consent Decree.  ECF No. 43 at 16–17.  But by the same token, EcoRights should be held to the agreements *it* made, including the term providing that the Consent

United States District Court
Northern District of California

1    Decree would be modified should a new and final NPDES Permit issue.  *See* ECF No. 40 ¶ 39.

2    Accordingly, the Court finds that the 2023 NPDES Permit is "final pursuant to applicable

3    law" for the purpose of paragraph 23 of the Consent Decree.

4    **B.    Proposed Modifications**

5    The City requests 17 changes to the Consent Decree to bring it into alignment with the

6    2023 NPDES Permit, as contemplated by Consent Decree paragraph 39.  ECF No. 42 at 16–20.

7    The City urges the Court to make the requested modifications now, arguing that EcoRights has

8    waived the right to object to the modifications on a revision-by-revision basis because it declined

9    to meet and confer with the City about individual revisions before the City filed its motion.  ECF

10   No. 42 at 20; ECF No. 44 at 12–15.  EcoRights responds that its choice not to engage in revision-

11   by-revision discussions was justified and requests a chance to meet and confer about the

12   modifications now, which "would give the parties both incentive and opportunity to consider

13   whether a compromise outcome regarding dates short of the unduly lenient dates in the 2023

14   Permit could be reached."  ECF No. 43 at 21.

15   The language of the Consent Decree is unambiguous and does not leave room for

16   "compromise outcome[s]" with dates different from those imposed in the 2023 NPDES Permit.

17   *See* ECF No. 40 ¶ 39 ("If . . . the Regional Board . . . issues a new or reissued NPDES Permit to

18   the City for the Treatment Plant that becomes final pursuant to applicable law and alters the CWA

19   requirements applicable to the City that are reflected in the requirements of this Consent Decree,

20   this Consent Decree *will be modified to reflect those CWA requirements*") (emphasis added).

21   Thus, the Court sees no point in ordering the parties to meet and confer in the hopes of reaching a

22   "compromise outcome" that is not sanctioned or contemplated by the Consent Decree.  Instead,

23   the Court will order the parties to meet and confer regarding *only* whether the modifications the

24   City proposes, ECF No. 42 at 16–20, "reflect the terms of the [2023] NPDES Permit," as provided

25   in the Consent Decree.  ECF No. 40 ¶ 40.

26   **CONCLUSION**

27   The City's motion to modify the consent decree is granted.  The Court orders the parties to

28   meet and confer regarding the modifications necessary to bring the Consent Decree into alignment

with the requirements of the 2023 NPDES Permit.  Within 28 days of entry of this order, the parties shall file either a joint proposed amended consent decree or a joint letter brief of no more than 10 pages detailing the disputed modifications and the parties' respective positions on them.

**IT IS SO ORDERED.**

Dated:  March 5, 2025



_____
JON S. TIGAR
United States District Judge